IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BRENDA COLEMAN                                                            PLAINTIFF

V.                                                                        CIVIL ACTION NO.
                                                                          1:08-CV-230-SAA
MICHAEL J. ASTRUE,
Commissioner of Social Security                                           DEFENDANT

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Brenda Coleman for a period of disability and disability insurance benefits under Title II and Supplemental Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district court's jurisdiction over Coleman's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636 (c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

**PROCEDURAL HISTORY**

Brenda Coleman protectively filed a Title II application for a period of disability and disability insurance benefits on May 12, 2004 and a Title XVI application for supplementary security income on April 5, 2007. Coleman alleged the onset of her disability was September 23, 2003. Tr. 66. The claims were administratively denied. Tr. 21, 57-59, 342-45. The plaintiff

1

timely filed a request for a hearing before an administrative law judge [ALJ] which was held on April 6, 2007. On July 6, 2007, the ALJ issued his decision denying the claim. Tr. 18-29. The Appeals Council reviewed the additional evidence presented by Coleman, but denied her request for further review, Tr. 8-10, making the ALJ's decision the final decision of the Commissioner, now ripe for the court's review.

## FACTS

The plaintiff was born October 16, 1951 and was fifty-one years old at the time of onset of alleged disability. Tr. 63. She completed high school and a few college courses. Tr. 375. Her past relevant work included work as a manager of a moving and storage company or other work for moving and storage companies. Tr. 375-76. She alleged that she was unable to work due to chronic back pain, degenerative disc disease, difficulty with concentration and depression. Tr. 66, 379-80. In July 2004, Coleman was involved in an accident that caused a comminuted proximal humerus fracture requiring open reduction and internal fixation surgery that resulted in some decreased function of her left arm. Tr. 257-58, 380, 382.

The ALJ found that Coleman had the following severe impairments: status post left humerus surgeries, generalized arthritis and a history of fibromyalgia. Tr. 23. The ALJ reviewed the record, Coleman's symptoms and the objective medical evidence and determined that she had the residual functional capacity [RFC] to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours during an 8 hour workday, and sit 6 hours during an 8 hour work day, with occasional stooping, kneeling, crouching, crawling, climbing and balancing and occasional overhead work with her left non-dominant upper extremity. Tr. 26-28. The ALJ concluded that with her RFC, Coleman was able to return to her past relevant work at a moving

and storage company, which is classified as light and skilled work, and therefore was not disabled. Tr. 28-29.

## DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner determines the plaintiff's residual functional capacity, and the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

---

[3] *See* 20 C.F.R. §§ 416.920, 404.1520(2007).

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. §§ 416.920(a)(4)(I), 404.1520(a)(4)(i)(2007).

[6] 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii)(2007).

[7] 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii)(2007).

[8] 20 C.F.R. §§ 416.920(a)(4)(iv),404.1520(a)(4)(iv)( 2007).

[9] 20 C.F.R. §§ 416.920(a)(4)(v),404.1520(a)(4)(v)(2007).

[10] *Muse*, 925 F.2d at 789.

Coleman contends that the Commissioner erred in the following ways:

1) The ALJ failed to consider all of her impairments and improperly substituted his own opinion for Coleman's testimony and the medical evidence in the record;
2) The ALJ failed to give the proper weight to Coleman's treating physicians' testimony and failed to seek clarification from Coleman's treating physician; and
3) The Appeals Council failed to address the legal arguments presented by Coleman's counsel on appeal.

Failure to Consider All of Coleman's Impairments & Improperly Substituting the ALJ's Own Opinion for Coleman's Testimony and the Medical Evidence in the Record
===

Coleman asserts that the ALJ and the Appeals Council failed to consider her severe impairments of: "migraine headaches, hypertension, obesity, sleep disturbance, erythema, cervical degenerative disc disease, two (2) annular tears, bilateral sacroiliac joint pain, lumbar muscle spasms, and multiple joint bone, tendon, muscle, nerve and soft tissue pains and impairments (variously described throughout the medical evidence of the record)." Docket # 11, p. 10. In addition, Coleman argues that the ALJ erred by substituting his own opinion rather than relying on her testimony and the medical evidence. Docket # 11, p. 14. These assertions essentially question whether there was substantial evidence to support the ALJ's determination.

Step 3 of the sequential evaluation process requires the ALJ to determine whether Coleman had a medically determinable impairment that is "severe" and whether she suffered from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Coleman testified that she was unable to work due to her chronic back pain, degenerative disc disease and difficulty with concentration, stress and depression. Tr. 66, 379-80. Coleman did not claim that migraine headaches, hypertension, obesity, sleep disturbance, erythema and bilateral sacroiliac joint pain affected her ability to work. The ALJ determined that Coleman did

5

not have an impairment or combination of impairments that met or equaled any listed impairment.

The burden is on Coleman to demonstrate that her symptoms and the medical evidence demonstrate that she meets or equals a listing. She points to no medical evidence in the record to support her argument that the ALJ and the Appeals Council failed to consider all of her impairments that she <u>claimed</u> affected her ability to work or to demonstrate that her impairments met the definitions of a severe impairment as found in the federal regulations; rather Coleman cites suppositions. The ALJ's RFC determination was based upon Coleman's symptoms, the extent to which her symptoms could reasonably be accepted to be consistent with the objective medical evidence and the medical opinion evidence. Tr. 26. The ALJ considered her symptoms, but found her description of limitations to be less than credible in light of the medical evidence. Tr. 27.

The determination of whether pain is disabling is within the ALJ's discretion. *Hollis v. Bowen*, 837 F. 2d 1378, 1384 (5th Cir. 1988). Subjective complaints of pain must be supported with objective medical evidence that could be expected to cause the pain. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)(internal citation omitted); 42 U.S.C. § 423 (d)(5)(A)(2007). Coleman's pain could be disabling if corroborated by the objective medical evidence. A CT of the lumbar spine on April 17, 2003 demonstrated mild disc bulging at L4-L5 and L5-S1, spondylosis of the facets at L5-S1 and bilateral SI (sacroiliac) joint disease. Tr. 240. Coleman also had an elevated sedimentation rate on April 13, 2004, but otherwise apparently normal lab work. Tr. 255. The court located no other radiologic or laboratory testing to substantiate Coleman's description of the severity of pain. Although she complained of back pain and

exhibited tenderness of the lumbar paraspinal muscles, her physical examinations revealed a normal gait, no numbness, tingling, atrophy, weakness or muscle loss. Tr. 213, 223, 242, 301-303. Dr. Winkelman initially evaluated Coleman on February 25, 2004 and found that she had significant pain in the lateral epicondyles of her right arm, some pain directly overlying the lumbar spine and "some ubiquitous pain in her muscles. Otherwise, really no significant findings, no significant hand swelling at this time." Tr. 314. Moreover, Coleman testified that she was able to cook, clean and care for her husband on a daily basis with occasional breaks. Tr. 378-79. Coleman also testified that she was able take care of her own personal needs, such as bathing, and was able to drive a car. Tr. 381-82. Consequently, the court finds that there was substantial evidence to support the ALJ's determination discounting Coleman's credibility regarding the level of her pain as unsubstantiated by objective medical findings and Coleman's own admitted level of functioning.

<u>Failure to Give the Proper Weight to Coleman's Treating Physicians' Testimony</u>

Coleman argues that the ALJ erred by failing to follow the approach outlined in the federal regulations when he evaluated the opinions of her treating physicians, Drs. Winkelmann and Moody . *See* 20 C.F.R. § 404.1527.

The ALJ may discount the treating physician's opinion when good cause is shown, such as when the physician's opinion "is conclusory, is unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). The Fifth Circuit has very clearly stated the approach an ALJ must take in according weight to a treating physician's opinion:

> [A]bsent reliable medical evidence from a treating or examining physician

7

> controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)(emphasis in original). The regulations cited in *Newton* also correspond to 20 C.F.R. §§ 416.927(d) and 416.912(e), which are applicable in cases, such as this one, also brought under Title XVI of the Social Security Act. Under 20 C.F.R. § 404.1527(d)[11] the factors to be considered in assessing the opinion of the *treating* physician include such common sense considerations as the length of the treatment relationship, frequency of examination by the physician, the nature and extent of the treatment relationship and the "supportability" of a medical source's opinion by relevant evidence. Section 404.1527(d)(3)[12] specifically defines "supportability" by detailing the approach that should be taken with non-examining medical sources whose opinions are not founded upon direct knowledge of a particular claimant's case:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

The ALJ noted that Coleman had arthritis that could cause pain and discomfort and that she had a history of fibromyalgia, but no definitive diagnosis in recent treatment notes. Tr. 26-27. He thoroughly discussed Coleman's medical records and her testimony regarding her

---

[11] *See also* § 416.927(d).

[12] *See also* § 416.927(d)(3).

pain severity, activity level and her ability to work.  Although an ALJ is required by federal regulation to consider six factors when determining whether or not the treating physician opinion is given controlling weight, *see* 20 C.F.R. § 404.1527(d); § 416.927(d), and although the ALJ did not specifically enumerate all the six factors followed by an explanation, there nevertheless is substantial evidence to support his conclusion to not give controlling weight to Coleman's treating physicians' opinions.

Dr. Winkelman's opinion was not afforded controlling weight because it was "not internally supported by his own clinical findings in his treatment notes." Tr. 28.  Dr. Winkelman failed to support his conclusions that Coleman was unable to work with objective medical evidence, which is required by § 404.1527(d)(3).  Beginning in February 2004 Coleman saw Winkelman approximately every two to three months through November 2006.  Tr. 314- 333.  In Winkelman's treatment notes only two notes describe detailed physical examinations of Coleman – those from her initial visit on February 25, 2004 and again on September 7, 2006. Tr. 314, 330.  Finally, The Medical Assessment of Ability to do Work Related Activities submitted by both Drs. Moody and Winkelman did not cite any objective medical evidence to support their conclusions concerning the severity of Coleman's limitations to perform work.  Tr. 335-37; 339-41.  Even though Coleman repeatedly states that her treating physicians had better evidence, she never provides objective medical evidence to support this position.  Docket 11, p. 15-16.  In the absence of objective medical evidence which contradicts the ALJ's conclusion, the court declines to conclude that the ALJ's determination violates 20 C.F.R. §§ 404.1527 and 416.927.

<u>Failure to Seek Clarification from Coleman's Treating Physician</u>

Coleman contends that the ALJ was required to seek clarification from her treating

physicians before discounting their opinions as required by 20 C.F.R § 404.1512(e). Docket # 11, p. 16. Coleman asserts that the ALJ had a misunderstanding of the "epicondyle" pain test and that had he contacted the treating physician he would have been instructed. Docket # 11, p. 17. Coleman's argument ultimately fails because she does not demonstrate prejudice as required by law.

The ALJ is required to re-contact a treating physician when the evidence is "inadequate" to assist in the determination of disability because it is ambiguous or not based on medically acceptable clinical or laboratory diagnostic techniques. *See* 20 C.F.R § 404.1512(e); 416.912(e); *Newton*, 209 F.3d at 453. The Fifth Circuit has held that it is the ALJ"s duty to "develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Newton v. Apfel*, 209 F.3d at 458 (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Reversal is justified only if the claimant can demonstrate that she was prejudiced. *Ripley*, 67 F.3d at 557. To do so Coleman must show that additional evidence would have been produced if the ALJ had fully developed the record and that the additional evidence might have led to a different conclusion. *Newton*, 209 F.3d at 458.

Aside from rhetorical statements, Coleman has not presented any evidence that demonstrates prejudice such that the ALJ"s determination may have been different had he re-contacted her doctors. On the contrary, the letters from Coleman's treating physicians that were presented to the Appeals Council merely reiterated their conclusions that she was unable to work without objective medical evidence to support the conclusory statements. Consequently, this court does not find that reversal or even remand is warranted.

<u>Failure of the Appeals Council to Address the Legal
Arguments Presented by Coleman's Counsel on Appeal</u>

Finally, Coleman argues that the Appeals Council violated its own internal rules by failing to follow § I-3-501 of The Hearings, Appeals and Litigation Law Manual (HALLEX), which required the Council to address specifically the additional evidence or legal arguments raised by the plaintiff. Docket # 11, p. 17. The Social Security Administration [SSA] suspended the requirement "for a detailed discussion of additional evidence" on July 20, 1995. HALLEX, § I-3-5-90. This suspension did not diminish the Appeals Council's responsibility in assessing the evidence, but it did obviate the need for recitation of a detailed discussion. Moreover, the HALLEX is an internal manual of the Office of Disability Adjudication and Review and as an internal manual does not have the legal force to bind the SSA. *Schweiker v. Hansen*, 490 U.S. 785, 789 (1981) (holding that the SSA Claims Manual does not bind SSA). The Appeals Council noted in its decision that it reviewed the additional evidence presented by Coleman and found that the information did not "provide a basis for changing the Administrative Law Judge's decision." This conclusion is adequate under § I-3-5-90 of HALLEX.

The evidence submitted to the Appeals Council became part of Coleman's record that is now being reviewed by this court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Consequently, it this court's role to determine whether the Appeals Council's determination that the ALJ"s decision was supported by substantial evidence in light of the evidence presented to it. The court has already found that there was substantial evidence to support the ALJ's determination that Coleman was not disabled and could return to her previous work. The new evidence presented to the Appeals Council included letters by Drs. Winkleman and Moody, a brief from Coleman's representative, and duplicate exhibits. Tr.11, 348, 349, 350, 353-55. These letters presented no new evidence to the Appeals Council, but merely restated the

physicians' opinions that Coleman is disabled. Because the new evidence presented to the Appeals Council fails to support Coleman's argument that the ALJ's decision was not based upon substantial evidence, the court finds that her argument is without merit.

## **CONCLUSION**

For the foregoing reasons, the court concludes that the Commissioner's final decision should be affirmed. A separate judgment affirming the Commissioner's final decision will issue simultaneously with this Memorandum Opinion.

This the 11th day of March, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE